Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| JOSÉ G. BAREA FERNÁNDEZ, SANDRA T. CAMUÑAS CÓRDOVA Y RUBÉN FREYRE<br><br>Recurrentes<br><br>v.<br><br>JUNTA DE DIRECTORES DEL CONDOMINIO SOL Y PLAYA, CONSEJO DE TITULARES DEL CONDOMINIO SOL Y PLAYA Y SU PRESIDENTA LCDA. MARÍA ISABEL NEGRÓN GARCÍA<br><br>Recurridos | TA2026RA00224 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor<br><br>Querellas número:<br>C-SAN-2023-0015674<br>C-SAN-2023-0015676<br>C-SAN-2023-0015678<br><br>Sobre:<br>Ley de Condominios de Puerto Rico<br>Ley Núm. 129 de 16 de agosto de 2020, según enmendada |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# S E N T E N C I A

En San Juan, Puerto Rico, a 18 de junio de 2026.

Comparecen los recurrentes, José G. Barea Fernández, Sandra T. Camuñas Córdova y Rubén A. Freyre Martínez, mediante el recurso de epígrafe y nos solicitan que revoquemos una *Resolución Sumaria* emitida y notificada por el Departamento de Asuntos del Consumidor, el 24 de febrero de 2026. Mediante esta, la agencia recurrida, desestimó de forma sumaria las querellas consolidadas de epígrafe, por lo que ordenó su cierre y archivo.

Por los fundamentos que se exponen a continuación, se confirma la *Resolución sumaria* recurrida.

## I

Actualmente, José G. Barea Fernández (Barea Fernández), Sandra T. Camuñas Córdova (Camuñas Córdova) y Rubén A. Freyre Martínez (Freyre Martínez; en conjunto, los recurrentes) son titulares de apartamentos en el Condominio Sol y Playa

(Condominio), que ubica en el Municipio de Rincón.[1] El 6 de agosto de 2023, Barea Fernández y Camuñas Córdova instaron cada uno una querella por derecho propio ante el Departamento de Asuntos del Consumidor (DACO o agencia recurrida), mientras que, al día siguiente, Freyre Martínez presentó una querella, también por derecho propio.

Mediante sus respectivas querellas, los recurrentes impugnaron una derrama de $500,000.00 autorizada por el Consejo de Titulares del Condominio Sol y Playa (Consejo de Titulares o parte recurrida), impuesta para sufragar los costos de unos trabajos de demolición.[2] La referida derrama había sido aprobada en una asamblea extraordinaria llevada a cabo el 8 de julio de 2023. Posteriormente, a solicitud del Consejo de Titulares, con la anuencia de Barea Fernandez, y en consideración a que las tres querellas versan sobre el mismo asunto, el DACO ordenó su consolidación.

Así las cosas, en octubre de 2023, los recurrentes solicitaron enmendar las querellas. Ello, con el fin de añadir a sus causas de acción la impugnación de una segunda derrama por la suma de $444,650.86, aprobada en una asamblea extraordinaria posterior, realizada el 17 de septiembre de 2023.

Esencialmente, mediante sus respectivas querellas, los recurrentes alegaron que las asambleas extraordinarias llevadas a cabo el 8 de julio de 2023 y el 17 de septiembre de 2023, fueron convocadas ilegalmente. Asimismo, que estas carecieron de *quorum* y que a los recurrentes se les privó arbitrariamente de su derecho al voto. También, estos adujeron que la Junta de Directores del

---

[1] Véase, *Resolución Sumaria* recurrida, determinaciones de hechos núm. 1-3, pág. 2.
[2] Ello, en cumplimiento con lo ordenado por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, mediante la *Sentencia* emitida y notificada el 14 de febrero de 2022, la cual hoy es final y firme. Véase, Entrada núm. 117 del caso núm. AG2021CV00945 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Condominio actuó sin facultad legal durante dichas asambleas, debido a dicha junta no había sido válidamente electa.

Por su parte, el 27 de noviembre de 2023, el Consejo de Titulares presentó una *Contestación a querella*. Esencialmente, adujo que procedía la desestimación de las querellas, por no cumplir con las disposiciones del Artículo 65 de la Ley Núm. 192-2020, según enmendada, 31 LPRA sec. 1923j.[3]

El 11 de junio de 2024, la parte recurrida instó una *Moción de desestimación*, en cuanto a Barea Fernández, de conformidad con el Artículo 65 de la Ley Núm. 192-2020, *supra.* Esencialmente, adujo que, al momento de presentar la querella, este tenía una deuda con el Consejo de Titulares, por concepto de la póliza de seguro maestra del 2020.

Por su parte, el 3 de julio de 2024, Barea Fernández presentó un escrito en oposición a la *Moción de desestimación* instada por el Consejo de Titulares. Asimismo, mediante dicha comparecencia, solicitó de la agencia recurrida la anotación de rebeldía al Consejo de Titulares, por este haber contestado la querella luego de transcurrido el término de veinte (20) días dispuesto en la Regla 8.1 del Reglamento Núm. 8034 de 14 de junio de 2011, conocido como *Reglamento de procedimientos adjudicativos* del DACO.

Luego de varias incidencias procesales, el 16 de septiembre de 2025, el DACO llevó a cabo una vista sobre el estado de los procedimientos. Surge de la *Minuta/Orden* correspondiente a esta vista que los recurrentes solicitaron acceso a evidencia documental; entiéndase, estados de cuenta de apartamentos, registros de asistencia y *quorum* de asambleas, con el fin de contar con los elementos para validar, tanto la legitimidad de las resoluciones impugnadas como la participación de los titulares. Por su parte, el

---

[3] Conocida como *Ley de Condominios de Puerto Rico.*

Consejo de Titulares argumentó que los planteamientos ya han sido resueltos en foros administrativos y judiciales, por lo que solicitó la paralización del procedimiento, hasta tanto el Tribunal Supremo resuelva varias controversias que tiene ante su consideración. Ello, con el propósito de evitar un litigio repetitivo y gastos innecesarios. En consideración a lo anterior, y en aras de poder determinar si procede la disposición sumaria de las querellas o si, por el contrario, es necesaria una vista evidenciaria, el DACO solicitó de las partes que presentaran sus posiciones y evidencia por escrito.

En atención a la solicitud del DACO, el 7 de octubre de 2025, la parte recurrida presentó una *Moción en cumplimiento de orden.* Esencialmente, reiteró su solicitud para que el DACO desestimara la querella instada por Barea Fernández, por no cumplir con las disposiciones del Artículo 65 de la Ley Núm. 192-2020, *supra.*

El 27 de octubre de 2025, los recurrentes presentaron una *Réplica en cumplimiento de orden y solicitud de descubrimiento de prueba.* Mediante el referido escrito, solicitaron la continuación de los procedimientos conducentes a celebrar una vista evidenciaria; entiéndase, que el DACO ordenara el descubrimiento de prueba, así como que señalara una conferencia sobre el estado de los procedimientos y, posteriormente, la vista en sus méritos.

El 8 de diciembre de 2025, el Consejo de Titulares presentó una *Moción informativa y solicitud de desestimación.* En síntesis, informó que el Tribunal de Supremo denegó el recurso presentado en el caso C-MAY-2023-0004703.[4] La parte recurrida razonó que, aunque la querellante es distinta, dicho caso versaba sobre los mismos hechos y reclamos consignados en las querellas de epígrafe. Nótese que, en ese caso, el Tribunal de Apelaciones validó una

---

[4] A tales fines, el 20 de noviembre de 2025, emitió una *Resolución* en el recurso núm. CC-2025-0418.

determinación del DACO en la que dicha agencia desestimó la querella, luego de llevada a cabo una vista evidenciaria.

Por su parte, el 7 de enero de 2026, los recurrentes presentaron una *Réplica en oposición a moción informativa y solicitud de desestimación*. Esencialmente, le solicitó al DACO que reconozca que la denegatoria de un *certiorari* por parte del Alto Foro no activa la doctrina de cosa juzgada. Asimismo, que le ordene a la parte recurrida a producir los documentos que los recurrentes le requirieron, como parte del descubrimiento de prueba, y que señale una vista evidenciaria.

Finalmente, tras evaluar las posturas consignadas por las partes en los escritos presentados, el 24 de febrero de 2026, el DACO emitió y notificó la *Resolución sumaria* recurrida. Mediante esta, adjudicó sumariamente las querellas consolidadas de epígrafe y las declaró No Ha lugar. En consecuencia, ordenó su cierre y archivo. Como fundamento para la adjudicación sumaria, el DACO manifestó lo siguiente:

> La prueba que obra en el expediente administrativo es suficiente para concluir que no hay controversia esencial sobre ningún hecho material, por lo que procede como cuestión de derecho que se emita resolución resolviendo la reclamación de forma sumaria.[5]

En desacuerdo, el 16 de marzo de 2026, los recurrentes presentaron una *Moción de reconsideración* oportuna. La agencia recurrida no adjudicó dicha solicitud, por lo que se entiende rechazada de plano. Así, el 30 de abril de 2026, la parte recurrente acudió ante este Foro mediante el recurso de epígrafe,[6] en el que señaló que el DACO cometió los errores siguientes:

> Erró el DACO al determinar que no existía controversia esencial sobre ningún hecho material y dictar una resolución sumaria, privando a los recurrentes de su derecho constitucional al debido proceso y a su "día en corte".

---

[5] *Resolución sumaria* recurrida, pág.1.
[6] Entrada núm. 1 del caso núm. TA2026RA00224 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA).

Erró el DACO al desestimar las querellas fundamentándose en el Artículo 65 de la Ley de Condominios, al dar por ciertas deudas imputadas unilateralmente por la Junta que no eran líquidas ni exigibles, y que en gran medida derivaban de actos declarados nulos previamente.

Erró el DACO al no anotar la rebeldía a la parte querellada a pesar de que esta contestó las querellas con dilaciones extremas de hasta siete meses, violando la Regla 8.1 de su propio Reglamento de Procedimientos Adjudicativos.

Erró el DACO al denegar el descubrimiento de prueba de documentos financieros fundamentales, impidiendo a los querellantes fiscalizar la actividad fiscal del Condominio y validar la legitimidad de los acuerdos de derrama.

Tras una evaluación preliminar del recurso de epígrafe, el 6 de mayo de 2026, emitimos y notificamos una *Resolución*. Mediante esta, le concedimos al Consejo de Titulares el término dispuesto en la Regla 63 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63,[7] para presentarnos su alegato.

En cumplimiento con nuestra orden, el 5 de junio de 2026, la parte recurrida presentó un escrito intitulado *Oposición a recurso de revisión judicial*.[8] En virtud de este, rechazó que el DACO incurriera en los errores que le imputan los recurrentes y adujo que procede confirmar el dictamen recurrido.

Con el beneficio de la comparecencia de ambas partes, así como tras evaluar el expediente administrativo elevado por el DACO,[9] procedemos a disponer del recurso ante nos.

**II**

**A**

La sección 4.5 de la la Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9675, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), y su jurisprudencia interpretativa disponen que la revisión judicial de un dictamen administrativo por parte del Tribunal de Apelaciones, se

---

[7] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

[8] Entrada núm. 8 del caso núm. TA2026RA00224 del SUMAC TA.

[9] Véase, *Moción en cumplimiento de resolución de 6 de mayo de 2026*, instada por el DACO. Entrada núm. 7 del caso núm. TA2026RA00224 del SUMAC TA.

limita a tres (3) aspectos: (1) si es apropiado el remedio concedido; (2) si las determinaciones de hechos están basadas en evidencia sustancial; (3) si las conclusiones de derecho fueron correctas. *Freyre Martínez v. Consejo de Titulares y/o Junta de Directores del Condominio Sol y Playa,* res. el 5 de marzo de 2026, 2026 TSPR 20. Sin embargo, como se verá a continuación, las agencias administrativas tienen facultad para emitir dictámenes sumarios, es decir, sin necesidad de llevar a cabo una vista evidenciaria.

Sobre el particular, la sección 3.7 de la Ley Núm. 38-2017, 3 LPRA sec. 9647, establece que, si una agencia administrativa determina que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias. En específico, la disposición citada establece lo siguiente:

> Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.
>
> La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede.

Sección 3.7(b), Ley Núm. 38-2017, 3 LPRA sec. 9647(b).

En el caso del Departamento de Asuntos del Consumidor (DACO), de conformidad con los amplios poderes y facultades que posee su Secretario o Secretaria, así como en virtud de la ley orgánica de la agencia,[10] el 14 de junio de 2011 se aprobó el Reglamento Núm. 8034, conocido como *Reglamento de*

---

[10] Véase, Artículo 6(g) de la Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 LPRA sec. 341e(g), conocida como *Ley Orgánica del Departamento de Asuntos del Consumidor.*

*Procedimientos Adjudicativos.* En esencia, este reglamento establece las directrices que regirán los procedimientos para la adjudicación de querellas ante la consideración del DACO.

El objetivo de esta reglamentación es "proveer un procedimiento uniforme para la solución de las querellas presentadas ante la agencia". *Quintero Betancourt v. El Túnel Auto*, 194 DPR 445, 453 (2015). Lo anterior, debido a que, "al igual que la vasta mayoría de las agencias administrativas, el DACo tiene como fin atender los asuntos que le fueron delegados de una forma justa, práctica y flexible [...]". *Íd.*

De este modo, la facultad del DACO para emitir dictámenes sumarios emana de la Regla 11 del Reglamento Núm. 8034, que versa sobre órdenes y resoluciones sumarias. Esta dispone lo siguiente:

> El Departamento ordenará el cumplimiento de lo que proceda conforme a Derecho sin la celebración de vista administrativa, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos. En tal caso, si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.

Regla 11.1 del Reglamento Núm. 8034.

**B**

La autoridad del DACO para adjudicar querellas relacionadas con acciones de impugnación presentadas por titulares de un condominio en el que haya al menos una unidad destinada a vivienda, emana de la Ley Núm. 192-2020, según enmendada, 31 LPRA sec. 1921 *et seq.*, conocida como *Ley de Condominios de Puerto Rico.* En virtud del Artículo 65 del referido estatuto, 31 LPRA sec. 1923j, los titulares pueden impugnar ante el DACO acuerdos, omisiones, o actuaciones de la Junta de Directores, del administrador interino, del presidente y del secretario, concernientes a la administración del inmueble. Ello, cuando estos le sean perjudiciales al titular o a la comunidad, o que sean

contrarios a la ley, la escritura de constitución o el reglamento del condominio.

Según dispone el citado articulado, para todo tipo de impugnación se tendrán treinta (30) días, contados a partir de la fecha en que se tomó el acuerdo o determinación a impugnarse, si se hizo en su presencia. En caso de que el titular afectado no haya estado presente en el momento en que se llegó a tal acuerdo o determinación, se cuenta con treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo.

Respecto a la legitimación para impugnar acuerdos, el Artículo 65 dispone lo siguiente:

> **El titular que quiera impugnar una acción u omisión de la Junta de Directores, del Administrador Interino, del Agente Administrador o un acuerdo del Consejo de Titulares tendrá que demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares** y que entregó copia del documento mediante el cual adquirió su apartamento a la Junta de Directores. Será excepción al requisito de no deuda, cuando la impugnación sea para cuestionar la deuda que alegadamente tiene. **En el caso de la impugnación de acuerdos del Consejo de Titulares tendrá que acreditar que estuvo presente o representado en la asamblea en que se tomó el acuerdo que impugna y que votó en contra de este**. Si estuvo ausente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada.

31 LPRA sec. 1923j. (Negrillas suplidas).

C

En el contexto administrativo, la figura de la rebeldía emana de la sección 3.10 de la Ley Núm. 38-2017, 3 LPRA sec. 9650. Esta dispone lo siguiente:

> Si una parte debidamente citada no comparece a la conferencia con antelación a la vista, o a cualquier otra etapa durante el procedimiento adjudicativo el funcionario que presida la misma podrá declararla en rebeldía y continuar el procedimiento sin su participación, pero notificará por escrito a dicha parte su determinación, los fundamentos para la misma y el recurso de revisión disponible.

En los casos administrativos ante la jurisdicción del DACO, la rebeldía emana de la Regla 8 del Reglamento Núm. 8034 de 14 de junio de 2011, conocido como *Reglamento de Procedimientos Adjudicativos*. En lo pertinente, la Regla 8.1 dispone lo siguiente:

> El Departamento notificará a todos los querellados la querella radicada en su contra. Esta notificación será un aviso escrito de que el querellado deberá contestar la querella en el término de veinte (20) días a partir de la notificación, **advirtiendo además que de no recibirse la contestación a la querella en dicho término se le anotará la rebeldía**. [...]

(Negrillas suplidas).

En el contexto judicial, la rebeldía está codificada en la Regla 45 de Procedimiento Civil, 32 LPRA Ap. V, R. 45. Al interpretar este mecanismo, el Tribunal Supremo considera que su propósito es atender las situaciones en que un demandado no contesta la demanda u omite defenderse de alguna otra forma. Asimismo, interpreta que el propósito de esta figura es disuadir a quien incurre en la dilación de los procesos. Véase, *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1068-1069 (2019); *Ocasio v. Kelly Servs.*, 163 DPR 653, 670-671 (2005).

La consecuencia jurídica de la anotación de rebeldía es que se admitan como ciertos todos los hechos correctamente alegados. *Ocasio v. Kelly Servs., supra,* pág. 671. Sin embargo, en el contexto de los procesos judiciales, el Tribunal Supremo considera a la rebeldía un *mecanismo procesal discrecional* por parte del foro primario. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 590 (2011).

En fin, la rebeldía de ninguna manera garantiza una adjudicación favorable para la parte promovente de la causa de acción. Véase, *Freyre Martínez v. Consejo de Titulares y/o Junta de Directores del Condominio Sol y Playa,* res. el 5 de marzo de 2026, 2026 TSPR 20. Ello, pues es importante que la parte que solicita el remedio alegue los hechos correctamente. *Íd.*; *Álamo v. Supermercado Grande, Inc.,* 158 DPR 93, 102 (2002).

### III

Mediante el primer señalamiento de error formulado, los recurrentes alegan que la agencia recurrida erró al determinar que

no existía controversia esencial sobre ningún hecho material y dictar una resolución sumaria. Sostiene que dicho curso de acción les privó de su derecho constitucional al debido proceso y a tener su "día en corte". Este error no se cometió.

Sobre este señalamiento, los recurrentes argumentan que una agencia administrativa está impedida de dictar resoluciones sumarias cuando existen hechos materiales controvertidos, hay alegaciones afirmativas no refutadas, o si surge de los documentos una controversia real. De este modo, los recurrentes consideran que el DACO ignoró la existencia de controversias fácticas sobre el *quorum*, así como respecto a la validez de los acuerdos alcanzados. Así, es la postura de los recurrentes que, de ser probados los hechos antes mencionados, se invalidaría la derrama en controversia.

Por su parte, en su alegato, la parte recurrida señaló que, si bien los recurrentes plantean la presunta existencia de controversias materiales sobre el *quorum*, las deudas y la validez de las derramas, ello no derrota la base dispositiva de la *Resolución sumaria* recurrida. Entiéndase, que antes de examinar la validez sustantiva de las derramas, los recurrentes tenían que demostrar que cumplían con los requisitos mínimos para impugnarlas y no lo hicieron.

En primer lugar, subrayamos que, según discutiéramos en nuestra exposición del derecho aplicable, el DACO cuenta con la facultad que emana de la LPAUG, así como de su Reglamento Núm. 8034, para emitir resoluciones sumarias que dispongan de las querellas ante su consideración. Ello, cuando, de la totalidad de la evidencia que obra en el expediente administrativo, surjan los elementos suficientes para adjudicar la querella. Es decir, que no surja una controversia real de hechos.

Como adelantáramos, en el dictamen recurrido, el DACO consignó que la prueba que obra en el expediente administrativo

bastaba para derivar la ausencia de controversias esenciales sobre hechos materiales. Por ejemplo, basado en dicha prueba, el DACO determinó que el Condominio cuenta con 69 titulares.[11] Asimismo, tras revisar el acta de la asamblea extraordinaria del 8 de julio de 2023, la agencia recurrida constató que esta contó con un *quorum* de 28 titulares; 20 de estos por sí mismos y los restantes 8 mediante *proxy*.[12]

En cuanto a Freyre Martínez, el DACO determinó, también basado en la evidencia que obra en el expediente, que este no compareció a la asamblea extraordinaria del 8 de julio de 2023. Tampoco otorgó *proxy* alguno ni poder notarial alguno, ni estuvo representado por abogado. En fin, según el acta de dicha asamblea, no surge que Freyre Martínez haya hecho constar en ninguna medida su oposición a la derrama que allí se autorizó.[13]

Por su pertinencia a la discusión del primer señalamiento de error, procede que tomemos conocimiento judicial de lo resuelto por el Tribunal Supremo, mediante opinión mayoritaria suscrita por la Jueza Asociada, Hon. Camille Rivera Pérez, en *Freyre Martínez v. Consejo de Titulares y/o Junta de Directores del Condominio Sol y Playa,* res. el 5 de marzo de 2026, 2026 TSPR 20. En esa ocasión, y en el contexto de una controversia similar a la que nos ocupa, el Alto Foro reseñó que, en un dictamen administrativo previo, el DACO determinó que, en efecto, Freyre Martínez no compareció a las asambleas del 8 de julio y del 17 de septiembre de 2023. Asimismo, que no acreditó justa causa para su incomparecencia, por lo que incumplió con el requisito de impugnar las derramas y los acuerdos alcanzados en dichas asambleas. En fin, no existen controversias esenciales de hechos que le impidieran al DACO concluir, sin

---

[11] Véase, *Resolución sumaria* recurrida, determinación de hechos núm. 4, pág. 2.
[12] Véase, *Resolución sumaria* recurrida, determinación de hechos núm. 9, pág. 3.
[13] Véase, *Resolución sumaria* recurrida, determinación de hechos núm. 15, pág. 3.

necesidad de una vista evidenciaría, que Freyre Martínez no satisface los requisitos mínimos necesarios para impugnar las derramas autorizadas en dichas asambleas extraordinarias.

Ahora bien, en cuanto a los otros dos recurrentes, la agencia recurrida determinó que Barea Fernández le otorgó un *proxy* a Camuñas Córdova, para que le representara en la asamblea extraordinaria del 8 de julio de 2023. De este modo, surge del expediente que Camuñas Córdova compareció a dicha asamblea por sí y en representación de Barea Fernández, en virtud del *proxy* que este le concedió. Sin embargo, el DACO determinó que, tanto el voto de Camuñas Córdova, como su capacidad representativa en beneficio de Barea Fernández, fueron invalidados por razón de que esta tenía una deuda con el Consejo de Titulares, ascendente a $2,194.70. Así, con 26 titulares a favor,[14] en la asamblea del 8 de julio de 2023, se autorizó la mencionada derrama de $500,000.00.[15]

Como veremos a continuación, si bien a Camuñas Córdova se le privó ilegalmente de su derecho al voto, tanto por sí como en su capacidad representativa en beneficio de Barea Fernández, lo cierto es que procede confirmar el dictamen recurrido. Nótese que, basado en la evidencia que obra en el expediente administrativo, el DACO razonó que la naturaleza de la deuda de Camuñas Córdova respondía al impago de una derrama impuesta el 5 de octubre de 2019, cuya validez esta nunca impugnó ante el DACO.

A pesar de lo anterior, en la determinación de hechos número 6 de la *Resolución sumaria* recurrida, la agencia recurrida reconoció que, el 28 de febrero de 2023, adjudicó mediante *Resolución* otras

---

[14] Entiéndase, que la aprobación de la derrama fue unánime. Según la determinación de hechos núm. 16, "[l]uego de que el Consejo de Titulares invalidara a los titulares sin derecho al voto, incluyendo *proxy* recibidos no válidos como el otorgado a la querellante Sandra Camuñas por parte del querellante José G. Barea Fernandez, **la composición de los titulares con derecho a ejercer el voto se redujo a 26 personas**". *Resolución sumaria* recurrida, pág. 4. (Negrillas suplidas).

[15] Lo mencionado en este párrafo emana de las determinaciones de hechos núm. 10-17 del DACO. Véase, *Resolución sumaria* recurrida, págs. 3-4.

tres querellas consolidadas en las que Barea Fernández y Freyre Martínez figuraban como querellantes.[16] Mediante la *Resolución* emitida como adjudicación a dichas querellas, el DACO "declaró nula y sin efecto la derrama aprobada el 5 de octubre de 2019 [...], para la reconstrucción de ciertas áreas recreativas y áreas comunes del condominio".[17] De manera cónsona, en esa ocasión la agencia recurrida le ordenó al Consejo de Titulares devolverle a los querellantes "los dineros que hubiesen pagado por concepto de la derrama anulada".[18]

Por un lado, es cierto que, como bien señala el DACO, Camuñas Córdova nunca impugnó la derrama del 5 de octubre de 2019. Sin embargo, resulta un proceder errado utilizar la alegada existencia de una deuda de $2,194.70, que es producto de una derrama declarada nula y sin efecto, como fundamento para privarle del derecho a votar en la asamblea extraordinaria del 8 de julio de 2023.

Ahora bien, también es necesario subrayar que, en la *Resolución sumaria* recurrida, el DACO concluyó lo siguiente:

> [A]l aplicar el derecho aplicable a los hechos contenidos en las querellas ante nuestra consideración, determinar que la derrama aprobada el 8 de julio de 2023 es una obra necesaria que solo requería el voto mayoritario [...] no nos cabe la menor duda de que, aún si los querellantes hubiesen tenido el derecho a ejercer el voto, esto de por sí no sería suficiente para derrotar la determinación del Consejo de Titulares del Condominio Sol y Playa que con el voto unánime de los 26 titulares válidos determinó aprobar la derrama [...].

Ciertamente, el Artículo 18 de la Ley Núm. 192-2020 establece que "[l]as obras necesarias para la conservación o seguridad del inmueble y para el uso eficaz de los elementos comunes serán acordadas por la mayoría de los titulares". 31 LPRA sec. 1921q.[19]

---

[16] Querellas núm. C-SAN-2020-0006328; C-SAN-2020-0007078 y C-SAN-2020-0007227.
[17] Véase, determinación de hechos núm. 6. *Resolución sumaria* recurrida, pág. 2.
[18] Véase, determinación de hechos núm. 6. *Resolución sumaria* recurrida, pág. 2.
[19] Sobre las obras necesarias, nótese, además, que la exposición de motivos de la Ley Núm. 192-2020 dispone que "[e]sta nueva Ley establece que, para obras necesarias para la conservación o seguridad del inmueble **solo se requiere de la**

Por tanto, lo cierto es que, aún si se le reconoce a Camuñas Córdova su derecho a un voto por sí y otro en representación de Barea Fernández, en contra de la derrama autorizada en la asamblea extraordinaria del 8 de julio de 2023, todavía esta se sostendría con el voto de los otros 26 titulares.

Así las cosas, en consideración a que nuestro ejercicio revisor se da contra el resultado al que llega el foro recurrido, y no contra sus fundamentos,[20] concluimos que el DACO actuó correctamente al desestimar las querellas consolidadas de epígrafe. Es decir, a pesar de la interpretación errada del DACO respecto al derecho al voto de Camuñas Córdova, consideramos que no existían controversias de hechos esenciales que justificaran la celebración de una vista evidenciaria y que impidieran la adjudicación de las querellas de manera sumaria.

En virtud del segundo error señalado, los recurrentes plantean que el DACO erró al desestimar las querellas, conforme el Artículo 65 de la Ley de Condominios Ley Núm. 192-2020, *supra*. Ello, tras validar unas deudas imputadas unilateralmente por la Junta de Directores, que no eran líquidas ni exigibles y las cuales, en gran medida, se derivaban de actos que fueron declarados nulos previamente. Este error tampoco se cometió.

Sobre este señalamiento, los recurrentes argumentan que no era posible para el DACO validar la legitimidad de las deudas alegadas por la Junta de Directores, sin permitir que se llevara a cabo descubrimiento de prueba. Ello, pues era necesario acceder a estados financieros, presupuestos y cheques que, a juicio de los recurrentes, probarían de manera incontrovertible la inexistencia de

---

**aprobación de una mayoría simple de los titulares**, siempre y cuando dicha obra no afecte en forma adversa los elementos comunes del inmueble". (Negrillas suplidas).

[20] "[E]s preciso recordar que el corolario básico del Derecho apelativo es que la apelación o revisión se da contra la sentencia o decisión apelada; es decir, contra el resultado y no contra sus fundamentos". *Pueblo v. Pérez*, 159 DPR 554, 566 (2003).

las deudas que se le imputan a los recurrentes. De este modo, estos cuestionan que el DACO fundamentara la desestimación sumaria de las querellas de epígrafe en su alegada falta de legitimación, conforme el Artículo 65 de la Ley Núm. 129-2020, *supra*, debido a que supuestamente adeudaban cuotas o derramas. Este planteamiento carece de méritos.

Como indicáramos en la discusión del primer error señalado, la agencia recurrida no fundamentó la desestimación de la querella instada por Freyre Martínez en la existencia de deuda alguna. Por el contrario, lo sustentó en su incomparecencia incontrovertida a las asambleas del 8 de julio y del 17 de septiembre de 2023, sin acreditar justa causa para dicha incomparecencia.[21]

En el caso de Barea Fernández, tal y como analizáramos, el DACO consideró que su falta de legitimación activa consistía en que este tampoco compareció a las asambleas. Sin embargo, si bien este otorgó un *proxy* para que Camuñas Córdova le representara, la agencia recurrida concluyó -a nuestro juicio, erróneamente- que esta no tenía capacidad representativa, así como tampoco para votar por sí, en calidad de titular, por motivo de una deuda con el Consejo de Titulares. Sin embargo, y a pesar de lo anterior, en consideración al análisis que formulamos como parte de nuestra discusión del primer señalamiento de error, no es necesario abundar con respecto a este planteamiento.

En el tercer señalamiento de error, los recurrentes adujeron que la agencia recurrida actuó incorrectamente al no anotar la rebeldía a la parte recurrida. Ello, a pesar de que esta contestó las querellas con dilaciones extremas de hasta siete (7) meses, lo cual infringe la Regla 8.1 del Reglamento Núm. 8034, que establece un

---

[21] Véase lo resuelto por el Tribunal Supremo mediante opinión mayoritaria en *Freyre Martínez v. Consejo de Titulares y/o Junta de Directores del Condominio Sol y Playa,* res. el 5 de marzo de 2026, 2026 TSPR 20.

término de veinte (20) días para contestar la querella. No les asiste la razón.

Sobre este particular, los recurrentes plantean que el DACO ignoró lo resuelto por el Tribunal Supremo mediante opinión mayoritaria, en *Freyre Martínez v. Consejo de Titulares y/o Junta de Directores del Condominio Sol y Playa,* supra. En esa ocasión, el Alto Foro expresó que, al igual que en los procesos judiciales, en el ámbito administrativo, la rebeldía constituye un mecanismo procesal discrecional por parte de la agencia.

No obstante, en consideración a una dilación similar a la que nos concierne, también por parte del Consejo de Titulares, el Tribunal Supremo consideró que el DACO erró al no proceder con la anotación de rebeldía. Así las cosas, a pesar de este señalamiento, el Alto Foro advirtió que "si bien el DACo pudo haber incurrido en un abuso de discreción al no anotarle la rebeldía a los peticionarios, su omisión no tuvo una consecuencia en cuanto al resultado final". *Freyre Martínez v. Consejo de Titulares y/o Junta de Directores del Condominio Sol y Playa,* supra. Ello, en la medida que el efecto de una anotación de rebeldía no es concederle una victoria automática a la parte querellante, sino únicamente "que se den por admitidas las aseveraciones de las alegaciones afirmativas". *Íd.* Consideramos pertinente extrapolar este análisis al caso de epígrafe.

En el caso ante nos, el DACO entendió razonablemente que la prueba que obra en el expediente administrativo basta para concluir que no existen controversias esenciales sobre hechos materiales y que ello posibilita la adjudicación sumaria de las querellas. Así, en consideración a que surge del expediente que, aún si se reconoce el derecho al voto de Camuñas Córdova, por sí y en su calidad como *proxy* de Barea Fernández, la validez de la derrama se sostiene por mayoría con 26 votos a favor, la anotación de rebeldía al Consejo de Titulares no hubiese variado el resultado.

Por último, mediante el cuarto y último señalamiento de error formulado, los recurrentes argumentaron que el DACO erró al denegar el descubrimiento de prueba de ciertos documentos financieros que consideran fundamentales. Adujeron que ello les impidió fiscalizar la actividad fiscal del Condominio y validar la legitimidad de los acuerdos de la derrama.

En consideración a que, como parte de nuestra discusión de los señalamientos de error primero y segundo, rechazamos la necesidad de realizar descubrimiento de prueba y validamos la adjudicación sumaria por parte del DACO, no es necesario abundar con respecto a este planteamiento. Procede confirmar la *Resolución sumaria* recurrida.

**IV**

Por los fundamentos que anteceden, se confirma la *Resolución Sumaria* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones